UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| UNITED STATES OF AMERICA, | CR 05-324-RE |
| | CR 05-326-RE |
| Plaintiff, | CR 05-328-RE |
| | CR 05-329-RE |
| | CR 05-330-RE |
| v. | |
| | OPINION AND ORDER |
| KEVIN MASON et al., | |
| Defendants. | |

REDDEN, Judge:

On March 4, 2008, the court granted defendant Kevin Mason's Motion for Discovery and Issuance of Rule 17(c) Subpoenas as to David Pankratz and the Portland Police Bureau ("PPB"), subject to the right of Pankratz and PPB to move to quash the respective subpoenas.[1] The court allowed defendants in the related "Secondhand Stores" cases—Troy Mohr (CR 05-326-2-RE),

---

[1] Because the parties are familiar with the factual background of this case, the court need not recite it here.

PAGE 1 - OPINION AND ORDER

Michael Dyer (05-328-1-RE), Toni Kotek (CR 05-328-2-RE), and Douglas Ives (CR 05-330-2-RE)—to join the motion for issuance of subpoenas. On April 3, 2008, defendants served a subpoena <u>duces</u> <u>tecum</u> on Pankratz. On April 10, 2008, defendants served PPB with a subpoena <u>duces</u> <u>tecum</u>.

Before the court are Motions to Quash Subpoenas filed by David Pankratz (doc. 126) and PPB (doc. 127). On April 18, 2008, the court heard oral argument. For the reasons that follow, the motions to quash are GRANTED.

Federal Rule of Criminal Procedure 17(c) provides a defendant with an opportunity to obtain evidentiary material by subpoena <u>duces</u> <u>tecum</u>. <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 219 (1951). It is clear, however, that Rule 17(c) was not intended to expand the scope of criminal discovery under Rule 16, or to provide a broad basis for a "fishing expedition." <u>Id</u>. at 220; <u>United States v. MacKey</u>, 647 F.2d 898, 901 (9th Cir. 1981). Moreover, the use of Rule 17(c) subpoenas to obtain information solely for impeachment purposes has generally been held to be insufficient to justify pretrial production of documents in advance of trial. <u>United States v. Fields</u>, 663 F.2d 880, 881 (9th Cir. 1981).

Federal Rule of Criminal Procedure 17(c)(2) authorizes a trial court to quash or modify a subpoena that is unreasonable or oppressive. In general, Rule 17(c) subpoenas require a showing of relevancy, admissibility, and specificity. <u>United States v. Nixon</u>, 418 U.S. 683, 700 (1974). The defendant bears the burden of demonstrating a "sufficient likelihood" that the documents sought are material to any issue in the case. <u>Nixon</u>, 418 U.S. at 700. The mere hope that the documents, if produced, may contain evidence favorable to the defendant's case is not sufficient. <u>United States v. Bookie</u>, 229 F.2d 130, 133 (7th Cir. 1956). The defendant must also

demonstrate that the subpoenaed material is "admissible with respect to the offenses charged in the indictment." Nixon, 418 U.S. at 700.

"Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." Nixon, 418 U.S. at 702. Even upon a showing of relevance, admissibility, and specificity, a court must consider whether the material is "otherwise procurable," whether the proponent can "properly prepare for trial without such production," and whether "the failure to obtain such inspection may tend unreasonably to delay the trial." Id. at 699.

### The Pankratz Subpoena Duces Tecum

Defendants seek various financial and tax records from Pankratz, including his: (1) federal and state tax returns from 2001 to the present, and records of any individual or joint business entity that may reflect income from illegal activities; (2) bank and investment records; (3) shipping records; (4) credit card records; (5) all e-mail, eBay, and PayPal records related to the purchase and sale of property in the Secondhand Stores market; (6) any records of dealings with Gary Wain, Steve and Denise Brooks, or any other person who assisted Pankratz in the sale or shipment of stolen property during the FBI's investigation; (7) phone records; and (8) any other data or documents related in any way to the FBI's investigation of the Secondhand Stores market. Defendants argue that this material is relevant to Pankratz's credibility, bias, and his motive for cooperating with the government. Defendants also contend the material is relevant to impeaching FBI Special Agent Frazier. I disagree.

Rule 17(c) subpoenas are designed to procure documents that will be used at trial, and I

am not persuaded that Pankratz's tax returns, financial documents, and financial and personal emails from the last seven years are relevant or "admissible with respect to the offenses charged in the indictment." Nixon, 418 U.S. at 700. Defendants seek numerous documents that pre-date or post-date the FBI's investigation, which are clearly not relevant to any issue at trial. Whatever marginal relevance the other documents might have as to Pankratz's credibility, motive, and bias would likely be outweighed by the substantial risk confusing the issues, misleading the jury, and needless presentation of cumulative evidence. Fed. R. Evid. 403; cf. United States v. Komisaruk, 885 F.2d 490, 495 (9th Cir. 1989) (holding that the trial court may exclude evidence on cross-examination that is only "marginally relevant"). The government acknowledges that Pankratz profited from the sale of stolen merchandise during the government's investigation. Indeed, through discovery, the government provided defendants with internal FBI reports, detailing all of the financial transactions involving informants in this case. Those reports confirm that Pankratz netted more than a million dollars selling stolen merchandise during the course of the FBI's investigation. That evidence is sufficient to appraise the jury of Pankratz's potential biases and motivations. See United States v. Manning, 56 F.3d 1188, 1197 (9th Cir. 1995) ("The trial court does not abuse its discretion so long as the jury receives sufficient information to apprise the biases and motivations of the witnesses."). As such, additional evidence of his profit from the sale of stolen merchandise would be cumulative and would likely confuse the issues and mislead the jury. Moreover, Pankratz has not been convicted of any tax or theft crimes, and therefore extrinsic evidence of his failure to pay taxes or his profit from the sale of stolen property is also inadmissible.

As noted, Rule 17 is not intended to serve as a discovery tool, or to provide a broad basis

for a "blind fishing expedition seeking unknown evidence." MacKey, 647 F.2d at 901. Here, a cursory examination of defendants' subpoena and supporting memoranda reveals that the subpoena duces tecum is just that—a fishing expedition. Defendants' arguments that Pankratz's records "may" or "might" help impeach his credibility, or demonstrate bias or motive are nothing more than speculation. Moreover, the government has candidly acknowledged that Pankratz was allowed to profit from the sale of stolen property. The government has provided and will continue to provide defendants with all impeachment and exculpatory evidence in its possession. These disclosures are sufficient to allow defendants to "properly prepare for trial" without production of Pankratz's personal and financial records. Nixon, 418 U.S. at 699.

### The Portland Police Bureau Subpoena

Defendant Kevin Mason seeks copies of all pawn tickets submitted by Cash Till Midnight/A-1 Cash to PPB. Defendant also seeks copies of all hold orders, property/evidence receipts, and/or incident reports related to any property seized from, or put on hold at Cash Till Midnight/A-1 Cash.[2] At oral argument, defendant argued that the documents are relevant to his state of mind and his belief that he was complying with Portland City regulations and assisting PPB in recovering stolen property. Defendant suggested that the PPB pawn slips and hold orders may contain potentially favorable information written by Portland Police Officer Carter.

Defendant's argument as to the relevance of the Portland records at issue is speculative.

---

[2]When Portland Police discover stolen property at a secondhand store, they may seize the property for evidence in the theft case, and issue a property receipt (*i.e.*, police report) to the secondhand dealer. Alternatively, they may issue a "hold order" and require the secondhand dealer to hold the stolen property for 180 days.

PAGE 5 - OPINION AND ORDER

The mere hope that the pawn slips, if produced, may contain evidence favorable to the defendant's case is not sufficient to sustain a Rule 17(c) subpoena. Bookie, 229 F.2d at 133. Even if the PPB records were relevant, the subpoena duces tecum fails to identify the documents defendant seeks with sufficient specificity, and the subpoena would present an unreasonable burden to the City of Portland. Defendant's argument is not sufficient to require the City of Portland to search hundreds, if not thousands of documents for the proverbial needle in the haystack.

In any event, Defendant has much of this information available to him by alternative means. He was required by law to retain copies of pawn tickets, hold orders, and property receipts related to stolen property. The City of Portland points out that he may file a public records request under Oregon law and pay for production of at least some of the desired public records. Defendant is free, of course, to elicit testimony related to these alleged notes from Officer Carter at trial. Defendant has adequate and alternative means of obtaining and presenting this evidence.

## Conclusion

For the reasons stated above, the Motions to Quash Subpoenas filed by David Pankratz (doc. 126) and the City of Portland (doc. 127) are GRANTED.

IT IS SO ORDERED.

DATED this  25th  day of April, 2008

/s/ James A. Redden
James A. Redden
United States District Judge